RUSTON v. LUMBER COMPANY.

(*Jackson.*    May. 17,  1900.)

LIENS.  *Priority.*

Employees and laborers of a corporation or partnership have, under Acts 1897, Ch. 78, amending Acts 1883, Ch. 18, a lien upon all of its property for labor done within three months next before the institution of proceedings to enforce their lien; and their lien has priority, by virtue of said statutes, over the lien of attaching creditors who have first instituted suit and impounded the property, and this, too, where the corporation is a going concern.

Acts construed: Acts 1897, Ch. 78; Acts 1883, Ch. 18.

Cases cited: Bank v. Lumber Co., 91 Tenn., 12; Mfg. Co. v. Falls, 90 Tenn., 466; Green v. Williams, 92 Tenn., 226; Weller v. Mc-Nabb, 4 Sneed, 422; Burr v. Graves, 4 Lea, 557; Phillips v. Maxwell, 1 Bax., 31.

FROM PERRY.

Appeal from Chancery Court of Perry County. A. G. HAWKINS, Ch.

J. A. ENGLAND and F. M. CARTER for Ruston.

SLOAN & GREER for Lumber Company.

McALISTER, J.  Complainants, who are creditors of the Perry Lumber Company, filed their attach-

ment and injunction bill on September 14, 1898, for the purpose of enforcing their statutory liens, as day laborers, for services rendered. Prior to the filing of this bill, to wit, on the 20th of August, 1898, Webb & Wall and, J. M. Kittrell, who were simple contract creditors of said Perry Lumber Company, commenced an attachment suit against said company in the Circuit Court, and impounded certain property belonging to it. One W. M. Huddleston was appointed receiver in said cause by the Circuit Court, and took charge of the property. Complainants, eighty in number, claim liens on the attached property as day laborers and employees under the Act of 1897, Ch. 78, and accordingly attached the property and made Kittrell and Webb & Wall defendants. The defendants answered the bill, averring that complainants were not such day laborers at the time of filing their bill; that the sums claimed by them were not earned within three months prior to the filing of the bill, but included sums due long anterior to that time; that defendants' suits were commenced in the Circuit Court August 20, and complainants' bill was not filed until September 14; that the Circuit Court had appointed a receiver, who, at the date of complainants' bill, was disposing of the attached property, under the direction of the Court; that defendants, by their prior attachment suit in the Circuit Court, and appointment of the receiver, acquired a lien on the

attached property superior to complainants' lien. It was further averred that defendants' attachments were not levied on all the property of the Perry Lumber Company, but that it had, at the time, $1,000 in the Bank of Lexington, and other property mentioned; that the attachments of complainants were void because levied, or attempted to be levied, on property *in custodia legis;* that the Perry Lumber Company was a going concern at the time defendants' attachments were levied, and was at that time conducting its business in the ordinary way, so that defendants acquired priority by the levy of their attachments.

Proof was taken in the cause, and it was shown that the amounts due complainants were for services performed as day laborers and employees for said Perry Lumber Company within three months next before the filing of the bill. It was also shown that the Perry Lumber Company was a going concern and in full operation on the 20th day of August, 1898, when the attachments of Kittrell and Webb & Wall were levied on the property.

On the final hearing, the Chancellor decreed that complainants performed labor for said company within three months next before the filing of the bill and levy of their own attachment in this cause, and that, as such laborers, they had a lien on the corporate property of said company, of every character and description, for any sums

Ruston *v.* Lumber Company.

due them, and that their said lien is superior to that of the defendants, Kittrell and Webb & Wall, obtained by their attachment suits in the Circuit Court, and that they have a right to the funds attached in this cause and in the hands of the receiver, or a sufficiency, etc. The amounts decreed to be due the complainants aggregated $1,812.88.

Kittrell and Webb & Wall appealed, and have assigned as error the decree of the Chancellor holding that the liens of the laborers and employees of the Perry Lumber Company, fixed by filing the bill of September 14, 1898, and attaching the property in the hands of Will M. Huddleston, receiver, which had been impounded under the former attachment proceedings of the defendants, Kittrell and Webb & Wall, were superior to the attachment liens in defendants' favor, and in ordering the receiver to pay said laborers and employees the sum allowed by said decree. This decree was expressly authorized by the Act of 1897, Ch. 78, as follows, to wit:

"Section 1. That chapter 18 of the Acts of 1883 be so amended as to read as follows, to wit: That hereafter all employees and laborers of any corporation or partnership firm, doing or carrying on any corporate or partnership business in the State of Tennessee, shall have a lien upon the corporate or firm property of every character and description for any sums due them for their

labor and services performed for such corporation or partnership, and that such lien shall prevail over all other liens except the vendor's lien or the lien of a mortgage or deed of trust to secure purchase money and other liens created before the passage of this Act.

"Sec. 2. That no corporation or partnership doing business in the State shall have the power to execute a mortgage or deed of trust, or other instrument creating a prior lien upon the property of such corporation to that hereby created in favor of the employees and laborers, except to secure purchase money. The lien herein created, however, shall only extend to and protect such claim as may have accrued within three months of the bringing of any suit for the enforcement thereof, and shall continue during the pendency of any suit brought for its enforcement, and the same may be enforced by attachment, as mechanics' liens are enforced."

The Act of 1883, Ch, 18, which the Act of 1897 was designed to amend, provides, viz.:

"Section 1. That hereafter all employees and day laborers of any corporation or partnership firm, doing or carrying on any corporate or partnership business within the State of Tennessee, shall have a lien on the corporation or firm property, real and personal, for their labor and services performed for such corporation or partnership; *Provided,* That no valid lien existed at the time

of the commencement of the action to enforce
said employees lien and no *bona fide* purchaser
be effected by the lien of said employees; *Pro-
vided,* That proceedings for the enforcement of such
lien shall be begun within three months from the
time the lien attached, and if not, the lien shall
be lost and no longer exist.

"Sec. 2. That this lien be enforced by attach-
ment or otherwise, as in other cases."

It is insisted on behalf of defendant that, con-
struing the Act of 1883 and the amendatory Act
of 1897 together, that the purpose of the Legis-
lature was to prevent insolvent corporations and
firms from giving preferences to creditors by exe-
cuting mortgages, deeds of trust, etc. It is argued
that this purpose is made manifest from the title of
the original Act of 1882, viz.: "An Act to protect
employees and day laborers of corporations and part-
nership firms against the insolvency of such corpora-
ations and firms." The argument is made that so
long as a corporation is a going concern, an attach-
ment, for sufficient cause, of the assets of such in-
debted corporation by some of its creditors, secures
them priority over other creditors, and the commission
of a subsequent act of insolvency will not defeat the
atttachment, citing *Bank* v. *Lumber & Manufac-
turing Company,* 7 Pickle, 12-15.

It is insisted it could not have been the pur-
pose of the Legislature, in the passage of this
Act, to disturb liens acquired by the levy of an

attachment, and thus defeat the diligent creditor in the collection of his debt. But we reply that such is the effect of the enforcement of all mechanics' lien laws, and yet such Acts are held valid and constitutional. *Manufacturing Company* v. *Falls*, 6 Pickle, 466; *Green* v. *Williams*, 8 Pickle, 226; *Weller* v. *McNabb*, 4 Sneed, 422.

The priority of the laborers' lien in this cause does not rest upon the attachment, but upon the statute which declares the lien. *Burr* v. *Graves*, 4 Lea, 557.

The services of these laborers had been performed within three months preceding the bringing of their suit, and they were performing services when defendants sued out their attachments. In *Marks* v. *Murphy*, 76 Ind., 542, it was held, in construing a similar statute, that the lien relates back to the time the work was done or the material furnished, and takes priority over all intervening mortgages or judgment liens.

So it is held that the right of a material man, under the mechanics' lien law, to money going to a contractor, is superior to that of an ordinary creditor under proceedings in garnishment or attachment. Am. & Eng. Enc. L. (old ed.), vol. 15, p. 92, citing cases.

So in Alabama it is held that a mechanics' statutory lien for labor performed or materials furnished "accrues from the time the labor is done or commenced or the materials furnished, . . .

Ruston *v*. Lumber Company.

and that such lien is superior to that of an attachment levied on the property subsequent to its accrual, though before the commencement of the suit to enforce it." *Young* v. *Stoutz,* 74 Ala., 574.

If there be liens on the property prior to the commencement of the building upon which the work is done or for which materials are furnished, the lien for work and materials must be postponed to such prior incumbrances. *Jones* v. *Hancock,* 1 Md. Ch., 187.

The Tennessee statutes recognize the priority of the vendor's lien, the deed of trust to secure purchase money, and other liens created before the passage of the Act.

An analogy to the present statute may be found in the lien of the landlord on the crop raised by his tenant. In *Phillips* v. *Maxwell,* 1 Bax., 31, it was said by this Court that the landlord may proceed to fix and make specific his inchoate lien by levying his attachment on the crop raised on his premises, wherther in possession of the tenant or a third party, impounding it subject to the judgment and execution which he may recover at the termination of the suit. By § —— of the Code this lien is continued until the termination of the suit by judgment and execution, which may then be levied on his crop, on whosoever's lands it may be. The lien thus made fixed and specific relates back to the date of the contract and overrides any title acquired by the

20 P—35

Ruston *v.* Lumber Company.

purchaser of the crop from the tenant, although without notice.

We are unable to concur with counsel for defendants in any of the positions assumed by them in argument, and without further elaboration the decree of the Chancellor is affirmed.