The **CENTRAL SECURITY NATIONAL BANK OF LORAIN COUNTY, a National Banking Association, Plaintiff,**

v.

**ROYAL HOMES, INC., a Michigan corporation, et al., Defendants.**

**Civ. A. No. 39281.**

United States District Court,
E. D. Michigan, S. D.

Jan. 14, 1974.

Rex Eames, Eames, Petrillo & Wilcox, Detroit, Mich., for plaintiff.

Laurence D. Connor, Dykema Gossett, Goodnow & Trigg, Detroit, Mich., for defendants David Apel and Aviva Apel.

Robert G. Schwartz, Jackson, Mich., for defendants Royal Prince Homes, Inc., Royal King Homes, Inc., Morris Fixler, Lillian Fixler, Royal Crest Homes, Inc., Leslie Katona, Dora Katona, Royal Aristocrat Homes, Inc., Jack Moncarz, Mary Moncarz, Royal American Homes, Inc., Ruben S. Lazar, Carolyn O. Lazar, Royal Valley Homes, Inc., Donald E. Gaddes, Nancy Ann Gaddes, Royal Bay Homes, Inc., Donald Wolf, Velda M. Wolf, Stanley Wolf, Doris Wolf, Royal Park Homes, Inc., Martin Band, and Sue G. Band.

Laurence D. Connor, W. A. Steiner, Jr., Dykema, Gossett, Spencer, Goodnow & Trigg, Detroit, Mich., for defendants Royal Homes, Inc., David Apel, Aviva Apel, Royal Pride Homes, Inc., Stanley Price, and Rose V. Price.

Donald G. Fox, Hubbard, Fox, Thomas & Born, Lansing, Mich., for defendants Royal State Homes, Inc., Max J. Leonard, and Anita M. Leonard.

Karl R. Frankena, Conlin, Conlin, McKenney & Meader, Ann Arbor, Mich., for defendant Jack Rubinfeld.

John F. Seelie, John D. Cannell, Cleveland, Ohio, for defendants Jack Rubinfeld and Meir Lutman.

## OPINION AND ORDER DENYING MOTION TO DISSOLVE WRIT OF ATTACHMENT

KENNEDY, District Judge.

Defendants David and Aviva Apel ("debtors") have moved to dissolve the writ of attachment imposed on real property they own in Washtenaw County, Michigan. The first ground for their motion is that the writ is technically defective under the court rule governing attachments, GCR 1963, 735.2, in that the affidavit in support of the writ was not filed within five days of the issuance of the writ. While the parties are still in dispute on this question, the Court concludes that the issue has been mooted by the filing of a fresh affidavit and the issuance of a new writ of attachment, in unquestioned conformity with the court rule. The issue requires no further comment.

Defendants raise two constitutional objections to the writ of attachment, both of which are applicable to the new writ. First, defendants claim that since the writ was obtained by plaintiff without notice to defendants and without providing them an opportunity to be heard, the procedure by which it was obtained violates the Due Process Clause of the Fourteenth Amendment. Second, defendants claim that the Michigan attachment statute. Mich.Stats.Ann. § 27A.4001, M.C.L.A. § 600.4001, by allowing the attachment of property of a nonresident solely on the ground of nonresidency violates the Equal Protection Clause.

Plaintiff Central Security National Bank of Lorain County ("creditor") denies that the writ of attachment is unconstitutional, and alleges that the writ is necessary in this case to overcome a potential defense of lack of jurisdiction over the person. It is plaintiff's position that since service of process on the defendants may have been defective for reasons stated in plaintiff's supplemental brief (at pp. 2–4), defendants may yet raise a defense of lack of jurisdiction over the person; since attachment of property without notice and hearing has been authorized where necessary to secure jurisdiction,[1] the attachment in the instant case should be upheld as a means of overcoming the potential defense of lack of jurisdiction over the person.

■ The difficulty with plaintiff's argument is that the defendants have waived their defense of lack of jurisdiction over the person by filing an answer which omitted that defense. F.R.Civ.P. 12(h)(1) provides that "a defense of lack of jurisdiction over the person . . . or insufficiency of service of process is waived . . . if it is neither made by motion under this rule nor included in a responsive pleading or an amendment thereof permitted by Rule 15(a) to be made as a matter of course." Defendants filed their answer to the complaint on February 20, 1973, and it did not include a defense of lack of jurisdiction over the person. Defendants filed an amended answer and counterclaim on April 16, 1973, which also did not include the defense of lack of jurisdiction. Plaintiff answered defendants' counterclaim on August 21, 1973. Since a responsive pleading to the defendants' amended answer and counterclaim has been filed, defendants may no longer amend their pleadings as a matter of course under Rule 15(a); thus, the amendment clause to Rule 12(h)(1) does not apply. Under the rest of Rule 12(h)(1), defendants have waived their defense of lack of jurisdiction over the person and insufficiency of service of process. Thus, the instant attachment cannot be justified on the ground that it is necessary to secure jurisdiction over the parties; the parties defendant have consented to the Court's jurisdiction over them.

■ The constitutionality of the writ of attachment must now be decided. The threshold question, not raised by either party, is whether in issuing and executing the writ there was sufficient State action to invoke the Fourteenth Amendment. If the attachment had occurred in State court, State action would not be an issue, since the clerk of the State court who issued the writ and deputy sheriff who executed it are both State officials. In the present case, instead, the clerk of the United States District Court and a deputy United States Marshal, respectively, issued and executed the writ, and these two persons are not State officials. However, according to F.R.Civ.P. 64, the only reason this Court has the authority to issue such a writ is because the Michigan attachment statute and court rule provide for such a remedy. The State of Michigan has affirmatively sanctioned the use of attachment as a creditor's remedy, and this remedy would not exist but for the statute and court rule. Under these circumstances, there is State action within the meaning of the Fourteenth Amendment. See Reitman v. Mulkey, 387 U.S. 369, 87 S.Ct. 1627, 18 L.Ed.2d 830 (1967).

Prejudgment creditors' remedies such as garnishment, attachment and replevin have come under increasing judicial scrutiny in recent years. The United States Supreme Court has declared both prejudgment garnishment of wages and prejudgment replevin of chattels, where accomplished without notice and prior opportunity to be heard, impermissible under the Due Process Clause. Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969) and Fuentes v. Shevin, 407 U.S.

---

I. Ownbey v. Morgan, 256 U.S. 94, 41 S.Ct. 433, 65 L.Ed. 837 (1921).

**480**

67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972). Since the *Fuentes* decision, all the reported decisions found by the Court and counsel on the question of the constitutionality of prejudgment attachment of real property without notice and hearing have held such attachments to be unconstitutional. Idaho First National Bank v. Rogers, 41 USLW 2492 (Idaho Dist.Ct.1973); Gunter v. Merchants Warren National Bank, 360 F. Supp. 1085 (D.Me. 3-judge court 1973); Bay State Harness Horse Racing and Breeding Ass'n v. PPG Industries, 365 F.Supp. 1299 (D.Mass., 1973). Still other courts have held that the attachment statutes of various states violate the Due Process Clause, in cases involving attachment of bank accounts, Etheredge v. Bradley, 502 P.2d 146 (Alaska S.Ct., 1972); Schneider v. Margossian, 349 F. Supp. 741 (D.Mass. 3-judge court 1972), and chattels, McClellan v. Commercial Credit Corp., 350 F.Supp. 1013 (D.R.I. 3-judge court, 1972). The cases holding prejudgment attachment unconstitutional have uniformly relied on *Fuentes, supra.* It is of interest to note that *Fuentes* was a 4–3 decision by the then seven member Court, and the full Court is preparing to reconsider *Fuentes* this term. See 42 USLW 3345.

■ The Fourteenth Amendment provides that no state shall "deprive" any person of his property without due process of law. This language raises the question whether a lien on property is a "deprivation" of that property. Second, even conceding that a lien amounts to a deprivation of property, there is the question whether the lien represents an *unfair* deprivation of property, to use the language of *Fuentes* (407 U.S. at 97, 92 S.Ct. 1983 at 2002). The defendants' right to use, possess and alienate their property pending the outcome of the litigation must be balanced against the plaintiff's right to preserve an asset of the defendants to be used in satisfaction of plaintiff's judgment against defendants, should plaintiff prevail on his underlying claim.

■ In spite of the present lien on defendants' property, which lien admittedly restricts them from selling the property or borrowing on it with the ease or to the extent they could without the lien, the defendants may still possess the land, live on it, rent it to others, and collect rental income. They are not dispossessed of the land and they retain many of the rights of ownership. In contrast, the debtor in *Sniadach, supra,* was totally deprived of her wages during the time the garnishment was in effect, and the debtors in *Fuentes, supra,* were also totally deprived of their consumer goods once the replevin was accomplished. Moreover, the limited restriction on the defendant-debtor's ownership rights imposed by a writ of attachment is fair. It is true that the writ of attachment is a prior lien on the property and that any subsequent purchaser of the property would take subject to the lien; as a practical matter, this may prevent the defendants from selling their property at all. The plaintiff-creditor, however, has a legitimate interest in preventing the defendants from selling their property before his underlying claim is resolved; a creditor has a right to expect that a debtor will preserve his assets pending resolution of the creditor's claim against the debtor. The State of Michigan similarly has an interest in preventing claimed debtors from avoiding their creditors' claims by liquidating their assets before the creditor can reduce his claim to judgment. The plaintiff-creditor and the State of Michigan, in preventing the debtors from selling their property during the pendency of the action, have gone no further than necessary to protect their legitimate interests. It is true that if the plaintiff fails to prove his underlying claim, it will appear in retrospect that the present restriction on the defendants' right to sell their real property was unwarranted. But this is the price of the unavoidable delay in reaching the merits of the underlying issue of liability. The question of liability cannot be resolved instantly, and in the

meantime the parties' freedom of action must be restrained as fairly as possible. The restriction on the defendants is as limited as it can be and still protect the plaintiff's interests. It would be more unfair to impose no restrictions on the defendants' right to alienate their property and, as a result, while the plaintiff proceeded to reduce his claim to judgment, the defendants sold all their property available (as a practical matter) to the plaintiff to satisfy the judgment, and thereby defraud the plaintiff-creditor. Such a policy in its extreme could lead to a state of affairs in which plaintiffs suing in Michigan courts could never satisfy their judgments against non-resident defendants. Clearly, the State of Michigan has a valid interest in preventing such a state of affairs.

Defendants respond by saying that due process of law nevertheless requires notice and an opportunity to be heard prior to the issuance of the writ. Notice and prior hearing, however, may defeat the very purpose of the attachment. If a defendant-debtor is notified that his property wll be attached in ten days, for example, there is nothing to prevent him from selling the property before imposition of the writ, and the plaintiff-creditor would lose his access to the only property available to satisfy his eventual judgment.

In addition, one fact peculiar to the present case weighs in plaintiff's favor. Plaintiff is suing defendants for the face amount of $126,000 on a promissory note. The Court cannot ignore the fact that the rate of success for plaintiffs in actions on promissory notes is high. As with preliminary injunctions, the decision as to whether a particular restriction on a party's freedom of action during the pendency of litigation is fair rests to some degree on the Court's view of which party is more likely to succeed ultimately on the merits. It would be a travesty of justice if the plaintiff, through no fault of his own, were unable to collect his judgment on such a substantial claim when assets to satisfy that judgment were available at one time.

A secondary and independent reason for upholding the writ of attachment in the present case is that there has been no allegation or showing of hardship on the defendants as a result of the attachment. The hardship imposed on wage earners by prejudgment garnishment of wages was an important factor in the *Sniadach* decision, *supra*, 395 U.S. at 340–342, 89 S.Ct. 1820, at 1822. While the hardship in *Fuentes, supra,* was not as obvious, the Court did mention that the household goods replevied in that case may be "essential to provide a minimally decent environment for human beings in their day-to-day lives." *Id.,* 407 U.S. at 89, 92 S.Ct. at 1999. Defendants here make no claim that the attached property is essential in their day to day lives, and the fact that they profess to reside in a state other than Michigan, where the property is located, makes it improbable that the attached property is essential to them in their daily lives. This same improbability of hardship to the debtor in his daily life by reason of the attachment would be true in all cases of non-residents. The absence of hardship is a relevant and material factor in weighing the interests affected by the attachment. The fact that there is no hardship on the defendants on the present record as a result of the attachment leads to the inference that the present posture of the case is not an unfair one into which to "freeze" the parties pending the resolution of the underlying claim.

In sum, the writ of attachment in the present case and the process by which it was issued do not violate due process of law. Although the writ was issued without notice and hearing, the Court in *Fuentes* emphasized that "the essential reason for the requirement of a prior hearing is to prevent unfair and mistaken deprivations of property . . .." *Id.,* 407 U.S. at 97, 92 S.Ct. at 2002. The facts of the present case show only a carefully limited restriction of ownership rights in property, not a

deprivation of that property, and, in any case, the "deprivation" of property here is not an unfair one. The writ of attachment represents a limited intrusion into the defendants' rights of ownership in the property, and the intrusion is no broader than necessary to protect the creditor's legitimate interests. Defendants have made no showing that the writ places an unfair burden on them. Hence, there is no need to grant a prior hearing.

Defendants raise the additional argument that the attachment statute violates a non-resident's right to equal protection of the laws by allowing a party to attach another's property solely on the ground that the property owner is a non-resident. Admittedly, the Michigan attachment statute makes a sharp distinction between residents and non-residents. Such a classification is not inherently suspect, however, as are classifications based on race, national origin, or alienage. Nor, is the right to alienate one's property a fundamental right like the rights of privacy, free expression and interstate travel.[2] Therefore, the constitutionality of the statute must be judged in terms of whether there is a rational basis to support the apparent legislative judgment. This Court finds such a rational basis. The Michigan legislature could rationally conclude that the mere fact that a defendant in a Michigan civil action was a non-resident gave that defendant a particular temptation simply to sell whatever property he owned within Michigan, in order to avoid satisfaction of any judgment against him. Such a temptation would not occur to the defendant who lived and worked in Michigan; the Michigan resident would likely have to sell his home and most of his personal goods and quit his job to avoid completely his creditors' claims. It cannot be said that such a legislative judgment is irrational.

For the foregoing reasons, the Motion to Dissolve the Writ of Attachment is denied.

It is so ordered.

2. Defendants argue that the "right to travel" cases of Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969) and Dunn v. Blumstein, 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972) are applicable here. In both of these cases, however, the Supreme Court struck down State residency requirements which in effect withheld State-distributed benefits (welfare benefits and the right to vote) from newly arrived residents of the state, on the ground that such residency requirements unconstitutionally abridged the right to travel from state to state. These holdings do not apply to the present case; although it can be said that the defendants lost a benefit of Michigan residency (and were thereby penalized) by moving their residence from Michigan, it is always true that a person who moves *from* a state loses the benefits of residency in that state, and nothing in *Shapiro* or *Dunn, supra,* precludes this result. If the logic of defendants' position is extended, it would lead to the absurd result that Michigan must continue to confer the benefits of Michigan residency to former residents of Michigan, after they have moved to another state. Under this theory, there would be no reason why a person could not move from state to state during his lifetime and eventually, for example, earn the right to vote simultaneously in every state in the Union.