549 P.2d 257

**FIRST RECREATION CORPORATION, an Arizona Corporation, Appellant,**

v.

**Joseph J. AMOROSO, Appellee.**

**No. 2 CA–CIV 2055.**

Court of Appeals of Arizona,
Division 2.

May 4, 1976.

Rehearing Denied June 9, 1976.
Review Granted July 13, 1976.

**478**

Johnson, Hayes & Dowdall, Ltd. by Donald E. Gabriel, Tucson, for appellant.

Robertson, Molloy, Fickett & Jones, P. C. by Michael J. Meehan, Tucson, for appellee.

## OPINION

KRUCKER, Judge.

This is an appeal from an order refusing to dissolve a writ of attachment and a writ of garnishment. Defendant-appellant is First Recreation Corporation (hereinafter "FRC"), and plaintiff-appellee is Joseph J. Amoroso (hereinafter "Amoroso").

FRC contends on appeal: (1) the writ of attachment levied on FRC's real property should have been dissolved because prejudgment attachment of real property without notice and a hearing is unconstitutional; and (2) the writ of garnishment served upon the Southern Arizona Bank should have been dissolved because prejudgment garnishment without notice and a hearing is unconstitutional and because issuance of the writ violated the injunction rendered by the United States District Court for the District of Arizona in *Manning v. Palmer*, 381 F.Supp. 713 (D.Ariz. 1974).

On November 15, 1974, Amoroso commenced this action in superior court to collect on a $30,000 promissory note executed by FRC. The same day, Amoroso petitioned the court for a writ of attachment of real property. A.R.S. § 12–1521 et seq. With the petition, Amoroso submitted an affidavit and bond. The court ordered the clerk of superior court to issue the writ of attachment.

On December 9, 1974, Amoroso obtained a writ of garnishment pursuant to A.R.S. § 12–1571 et seq. without obtaining a court order. On December 11, 1974, the writ was served on the Southern Arizona Bank. On the same day the sheriff levied the writ of attachment on real property owned by FRC.

The Bank answered the writ of garnishment on December 12, 1974. The Bank's answer averred that it was not indebted to FRC except as follows:

"Garnishee is the appointed and acting Stock Transfer Agent for Defendant, First Recreation Corporation, and Garnishee holds the sum of $329.70 in its Trust Account #32–170000–00, which is a Trust Account established to pay the cash value of fractional shares to the shareholders of First Recreation Corporation in connection with a reverse stock split; that Garnishee is unable to determine what amount, if any, will remain in said Trust Account after the shareholders of First Recreation Corporation have claimed the amounts due them from that account.

WHEREFORE, Garnishee, having fully answered, prays judgment of the Court hereon, and for judgment for its answer fee herein in the sum of $25.00."

Amoroso did not controvert the Bank's answer.

After the issues had been joined in the main action, FRC moved to quash the prejudgment writs of garnishment and attach-

ment on April 23, 1975. On June 25, 1975, the trial court denied the motion. After hearing FRC's motion for reconsideration on September 29, 1975, the trial court issued a signed order denying the motion to quash the attachment and holding that in view of Amoroso's failure to controvert the garnishee-Bank's answer, the issue of the propriety of the pre-judgment garnishment was moot. FRC appeals from the September 29, 1975 order.

FRC first contends the statutory scheme for pre-judgment attachment is unconstitutional because it does not provide for notice to the debtor or a hearing on the probable validity of the claim before or immediately after issuance of the writ. FRC bases this contention on a long line of United States Supreme Court cases starting with *Sniadach v. Family Finance Corp.,* 395 U.S. 337, 89 S.Ct. 1820, 23 L.E.2d 349 (1969) and ending with *North Georgia Finishing, Inc. v. Di-Chem, Inc.,* 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975). The history and content of those cases is well known and does not bear repeating at length. Suffice it to say that the procedural safeguards those cases have imposed are mandated only where the provisional remedy in question operates to deprive the debtor of a "significant property interest." *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972). Here the issue is whether the Arizona pre-judgment attachment procedures as applied to real property affect a "significant property interest" of the debtor.

The rationale of *Spielman-Fond, Inc. v. Hanson's Inc.,* 379 F.Supp. 997 (D.Ariz. 1973), aff'd per curiam, 417 U.S. 901, 94 S.Ct. 2596, 41 L.Ed.2d 208 (1974) is controlling. *See also, Central Security Nat'l Bank of Lorain County v. Royal Homes, Inc.,* 371 F.Supp. 476 (E.D.Mich.1974). The question dealt with by the three-judge panel in *Spielman-Fond* was whether or not Arizona's mechanics' and materialmen's lien statutes, A.R.S. § 33–981 et seq., were unconstitutional. Plaintiffs argued that the statutes operated without prior notice

or hearing to deprive landowners of the right to alienate their property freely, and hence violated due process. The court rejected that argument, holding that the filing of such lien did not amount to the taking of a "significant property interest." The court distinguished *Sniadach,* supra, *Fuentes,* supra, and *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) on the ground that the challenged procedures in each of those cases deprived the debtor of the actual possession and use of tangible personal property. In contrast, the mechanics' and materialmen's lien procedures did not deprive the owner of the possession or use of his land. The court continued:

"Plaintiffs claim that there has been in effect a taking here. A lien, it is argued, clouds title and can in many situations amount to an absolute prohibition on the right to alienate property. Thus, by taking away the right to alienate property freely, the lien statutes have taken away a significant property interest. Plaintiffs cite *Shelley v. Kramer,* 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1947); *Buchanan v. Warley,* 245 U.S. 60, 38 S.Ct. 16, 62 L.Ed. 149 (1917), and *Kass v. Lewin,* 104 So.2d 572 (Fla.1958), as authority for their argument that the right to alienate property is a right which cannot be infringed. Those cases did, indeed, reaffirm the importance of the right to alienate property. But all the cases involved direct and total prohibitions on the right to alienate. The prohibitions involved were such that, even if a seller could find a willing buyer, the statutory or contractual prohibitions involved prevented consummation of the transaction. That is a different situation from the case at bar. Here, a lien is filed against the property and clouds title. It cannot be denied that the effect of such lien may make it difficult to alienate the property. If the plaintiffs can find a willing buyer, however, there is nothing in the statutes or the liens which prohibits the consummation of the transaction.

Even though a willing buyer may be more difficult to find, once he is found there is nothing to prevent plaintiffs from making the sale to him. The liens do nothing more than impinge upon economic interests of the property owner. The right to alienate has not been harmed, and the difficulties which the lien creates may be ameliorated through the use of bonding or title insurance." 379 F.Supp. at 999.

The Arizona pre-judgment attachment procedure has an effect on real property that is constitutionally indistinguishable from the effect of the mechanics' and materialmen's lien procedure challenged in *Spielman-Fond*. The sheriff levies a writ of attachment on real property by serving it on the defendant, endorsing the levy on the writ, and recording it with the county recorder in the county where the real property is located. A.R.S. §§ 12–1530(A), (B), 12–1559(1) (Supp.1975–76). From the date of the levy, the attachment is a lien on the real property subject thereto. A.R.S. § 12–1532(A). The levy of a writ of attachment on real property, like the filing of a mechanics' and materialman's lien does not deprive the debtor of the right to possess, use or enjoy his land. *See,* 6 Am.Jur.2d Attachment and Garnishment § 454. It is true that the presence of an attachment lien on land may render it difficult to sell. Like the mechanics' and materialmen's liens, however, the attachment lien does not affect the debtor's title to the land and he is not legally disabled from selling it. *J. H. Mulrein Plumbing Supply Co. v. Walsh,* 26 Ariz. 152, 222 P. 1046 (1924). Further, as with the mechanics' and materialmen's lien, the difficulties the attachment lien creates may be ameliorated by filing a bond under A.R.S. § 12–1536.[1] Since *Spielman-Fond* was affirmed on its merits by the United States Supreme Court, we are bound by it. We hold that under *Spielman-Fond,* the Arizona pre-judgment attachment procedures

as applied to real property do not deprive the debtor of any significant property interest. According, the trial court did not err in refusing to dissolve the pre-judgment writ of attachment.

In an attempt to dissipate the force of *Spielman-Fond,* FRC quotes the following language from *North Georgia Finishing, Inc.,* supra:

"We are no more inclined now than we have been in the past to distinguish among different kinds of property in applying the Due Process Clause." 419 U.S. at 608, 95 S.Ct. at 723, 42 L.Ed.2d at 758.

FRC implies this language means the Supreme Court will treat realty and personalty the same in determining the validity of provisional remedies that are available without prior notice or hearing. The quote is taken out of context and means nothing of the kind. A reading of the full opinion reveals that in using the quoted language the court was saying it would accord the same due process consideration to the business debtors in *North Georgia Finishing, Inc.* as it had to the consumer debtors in *Fuentes* and *Mitchell v. W. T. Grant Co.,* 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974). *North Georgia Finishing, Inc.* did not involve real property and cannot be read to say anything on the issue in the case at bar.

The trial court declined to reach FRC's constitutional challenge to the pre-judgment writ of garnishment, holding that since the garnishee-Bank denied indebtedness and its answer was not controverted, the garnishment issue was moot. In support of this ruling, Amoroso argues that the writ never operated to freeze any funds of FRC. We disagree with the trial court's interpretation of the garnishee-Bank's answer. The answer does not purport to deny all indebtedness. To the contrary, the answer reveals on its face that the garnishee-Bank held $329.70 in trust, some

---

1. FRC lists numerous dissimilarities between the attachment statutes and the mechanics' and materialmen's lien statutes. None are constitutionally significant.

of which might be left over after shareholder claims were satisfied. The answer therefore reveals a contingent indebtedness to FRC, and Amoroso's failure to controvert it did not require the trial court to discharge the garnishee-Bank. *See,* A.R.S. §§ 12–1589 and 12–1581(A). The effect of the writ was to freeze the funds in the trust account, some of which may be payable to FRC. The issue of the writ's constitutionality is not moot.

As we noted supra, Amoroso obtained the writ of garnishment on December 9, 1974, without obtaining a court order. Some months before on August 14, 1974, a three-judge federal district court panel rendered its decision in *Manning v. Palmer,* 381 F. Supp. 713 (D.Ariz.1974). In that case the court declared the Arizona pre-judgment attachment and garnishment procedures unconstitutional as applied to personal property, and enjoined all Arizona superior court clerks from issuing writs of garnishment and attachment "that are inconsistent with this opinion." 381 F.Supp. at 717.

The opinion of the court indicated that *Mitchell v. W. T. Grant Co.,* supra, requires at a minimum that a pre-judgment writ of garnishment be issued "upon a judge's authority" after the filing of a sufficient bond. *See, Thornton v. Carson,* 111 Ariz. 490, 492, 533 P.2d 657 (1975). The court further noted that under the procedure upheld in *Mitchell,* the debtor could immediately seek dissolution of the writ, and at the hearing on dissolution the creditor had the burden of proving the grounds for issuance of the writ. On failure of such proof the court was required to dissolve the writ, order return of the property, and award damages and attorney's fees to the debtor.

■ Here it is undisputed that there there was no hearing or notice to FRC before the writ of garnishment was issued. Further, although Amoroso obtained a superior court order for the issuance of the writ of attachment, it failed to do so for the writ of garnishment. In addition, under the Arizona garnishment statute, FRC was not entitled to petition for an immediate hearing on dissolution of the writ. We must therefore conclude that the issuance of the writ of garnishment was not consistent with the opinion in *Manning* and hence violated the injunction granted therein.

■ Does the fact that the issuance of the writ violated the injunction render it invalid as against FRC? We think it does. An act done in violation of an *in personam* injunction is invalid as to the person who obtained the injunction if he attacks it in a proper manner. 42 Am.Jur. 2d, Injunctions § 338. The plaintiffs in *Manning* were Joyce Manning and the class of "all other residents and citizens whatsoever situated in the State of Arizona . . . ." 381 F.Supp. at 714. We think FRC, an Arizona corporation, was a member of the class of plaintiffs in *Manning.* FRC has validly attacked the writ of garnishment and it must be set aside.

The order of the trial court is affirmed insofar as it denies FRC's motion to quash the writ of attachment and reversed insofar as it holds the garnishment issue moot. The case is remanded with directions to enter an order dissolving the writ of garnishment.

HOWARD, C. J., and HATHAWAY, J., concur.