558 P.2d 917

**FIRST RECREATION CORPORATION, an Arizona Corporation, Appellant,**

v.

**Joseph J. AMOROSO, Appellee.**

**No. 12735–PR.**

Supreme Court of Arizona,
In Banc.

Dec. 30, 1976.

Johnson, Hayes & Dowdall, Ltd., by Donald E. Gabriel, Tucson, for appellant.

Robertson, Molloy, Fickett & Jones, P. C., by Michael J. Meehan, Tucson, for appellee.

CAMERON, Chief Justice.

Defendant, First Recreation Corporation, appealed from an order of the trial court which denied First Recreation's motion to quash a writ of attachment and refused to rule on its motion to quash a writ of garnishment on the basis that the issue raised by that writ was moot. Division Two of the Court of Appeals affirmed in part and reversed and remanded in part the decision of the Superior Court. Both parties petitioned this court for review which we granted. The opinion of the Court of Appeals, 26 Ariz.App. 477, 549 P.2d 257 (1976) is vacated.

Two questions are presented by this appeal:

1. Did the prejudgment writ of attachment levied upon the defendant's real property violate the due process clause of the Fourteenth Amendment?

2. Should the trial court have quashed the prejudgment writ of garnishment levied upon the defendant's bank account?

We are concerned with the attachment and garnishment statutes, A.R.S. § 12–1521, et seq. and § 12–1571, et seq., as they existed prior to their amendment by the 1976 session of the Arizona legislature. Laws 1976, Chap. 170, § 9, et seq. and § 14, et seq.

The factual setting out of which this case arose is as follows. On 30 October 1973, the defendant, First Recreation Corporation, signed a $30,000 promissory note payable to plaintiff, Joseph J. Amoroso. The note was due on or before 30 October 1974. On 15 November 1974, the note having fallen due and a demand for its payment having been refused, plaintiff Amoroso commenced this action. A complaint on the note and an ex parte petition for issuance of a prejudgment writ of attachment were presented to the court. In addition, Amoroso filed an affidavit in support of his petition as required by A.R.S. § 12–1522(A)(1) and (B), and a bond payable to First Recreation in the amount of $35,000 as required by A.R.S. § 12–1524. Based on the petition, affidavit and bond, the Honorable Robert O. Roylston, Judge of the Pima County Superior Court, issued an order directing the Clerk of the Court to issue a writ of attachment pursuant to A.R.S. § 12–1521, et seq.

The writ was delivered to the Pima County Sheriff with a request that he levy the attachment on certain specified real property. On 11 December, the Sheriff levied, by filing with the county recorder, the attachment on First Recreation's real property and made service of the writ upon the corporation's Vice President Harold Kaufman, pursuant to A.R.S. § 12–1530(A) and (B).

On 9 December, Amoroso, without a court order, obtained a prejudgment writ of garnishment. This writ was issued by the Clerk of the Court and was served upon the Southern Arizona Bank on 11 December. The bank filed its answer to the writ on 13 December. It averred that it was not indebted to First Recreation except that it held $329.70 in a trust account established to pay the cash value of fractional shares to the shareholders of First Recreation in connection with a reverse stock split, and that an unknown amount would be owing to First Recreation after the payment to the shareholders.

In due course, First Recreation was served with a summons and a copy of the complaint and on 23 April 1975 filed a motion to quash the prejudgment writs of attachment and garnishment.

The Honorable Harry Gin, Judge of the Superior Court of Pima County, subsequently heard arguments both on the origi-

nal motion and on First Recreation's motion for reconsideration. On 29 September 1975, Judge Gin issued an order reaffirming the previous denial of the motion to quash the writ of attachment and ruling that the issue raised by the prejudgment writ of garnishment was moot due to the failure of Amoroso to controvert the garnishee-bank's answer. First Recreation appeals from that order.

## CONSTITUTIONALITY OF THE WRIT OF ATTACHMENT

First Recreation, relying on a series of Supreme Court cases, contends that Arizona's attachment statute, A.R.S. § 12–1521, et seq., in effect at the time of this action, was unconstitutional. It asserts that because the statute did not provide for notice to the debtor or for a hearing on the probable validity of the claim either before issuance of the writ or immediately thereafter, it violated the due process clause of the Fourteenth Amendment.

The series of cases upon which defendant relies is well known. It includes *Sniadach v. Family Finance Corp.*, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969); *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); *Mitchell v. W. T. Grant Co.*, 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974); and *North Georgia Finishing, Inc. v. Di-Chem, Inc.*, 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975).

In *Sniadach*, supra, the court held a Wisconsin prejudgment wage garnishment statute unconstitutional. In reaching that conclusion, the court said:

"Where the taking of one's property is so obvious, it needs no extended argument to conclude that absent notice and a prior hearing (citation omitted) this prejudgment garnishment procedure violates the fundamental principles of due process." 395 U.S. at 342, 89 S.Ct. at 1823, 23 L.Ed.2d at 354.

In *Fuentes*, supra, the court held the Florida and Pennsylvania prejudgment replevin statutes invalid under the Fourteenth Amendment. It concluded that the statutes in question work a deprivation of property without due process of law in that they deny the debtor the right to a prior opportunity to be heard before the chattels to be replevied are taken from his possession.

While in *Roofing Wholesale Co., Inc. v. Palmer*, 108 Ariz. 508, 502 P.2d 1327 (1972), we declined to recognize *Fuentes*, supra, as binding because it was decided by four justices of a nine justice court with seven justices sitting, on the basis of the subsequent decisions of the Supreme Court in *Mitchell*, supra, and *North Georgia Finishing*, supra, we held our own replevin statute, A.R.S. § 12–1301, et seq., unconstitutional in *Thornton v. Carson*, 111 Ariz. 490, 533 P.2d 657 (1975).

In the third case, *Mitchell v. W. T. Grant Co.*, supra, the court sustained a procedure whereby personal property could be seized by a creditor under a writ of sequestration. It did so on the basis that certain procedural safeguards including continuous judicial supervision and a hearing immediately after the seizure rendered the statute constitutional.

Finally, in *North Georgia Finishing*, supra, the court struck down a garnishment statute on the same reasoning utilized in *Fuentes v. Shevin*, supra. While the asset garnished was a commercial bank account and not a wage earner's salary as in *Sniadach*, supra, the court rejected that as a distinguishing characteristic. Noting that the statute lacked the procedural safeguards present in *Mitchell*, supra, and that the defendant had been deprived of the use of the funds in question without notice or an opportunity to be heard, the court concluded that the procedure violated the due process clause.

First Recreation asserts that because the procedural safeguards set forth in these cases are lacking in the challenged statute it cannot stand. We do not agree.

The procedural safeguards established by the *Sniadach-North Georgia Finishing* line of cases are mandated only where there has been a deprivation of a "significant property interest." *Fuentes v. Shevin*, supra, 407 U.S. at 86, 92 S.Ct. at 1997, 32 L.Ed.2d at

573. The threshold issue is whether the Arizona prejudgment attachment procedures as applied to real property constitute a deprivation of a "significant property interest" of the debtor. A.R.S. § 12–1532(A) provides that "[t]he levy of the writ of attachment upon any property of defendant subject thereto is a lien from the date of the levy on the real property * * *." The levy of such a writ does not deprive the defendant of the right to possess, use, or enjoy his land. While an attachment does restrict the right to sell or encumber the property with the ease or to the extent possible absent such a lien, it by no means prohibits such transactions. We have said:

"An attachment lien does not, * * * affect the general title of the owner of the property, and therefore property under attachment may be conveyed by the debtor, subject to the attachment. (citations omitted)

"If the attachment is extinguished, the sale of the property becomes absolute. (citations omitted)

"The property may be discharged from the attachment by agreement of the parties. (citations omitted)

"The attaching creditor and the debtor may join in a sale of the attached property without pursuing all the steps named in the statute, and the agreement to sell and apply the proceeds to the payment of the debt is valid. (citations omitted)" *J. H. Mulrein P. S. Co. v. Walsh,* 26 Ariz. 152, 159, 222 P. 1046, 1049 (1924).

Thus, the owner of the attached property may continue to live on it, to use it as he sees fit, to rent it and collect rent on it.

By contrast, the wage earner in *Sniadach,* supra, was totally deprived of the garnished portion of her wages, clearly a significant property interest. The goods replevied in *Fuentes,* supra, were physically seized and taken from the consumers who were using them, and the defendant in *North Georgia Finishing,* supra, was totally deprived of the use of the funds in the bank account garnished by the plaintiff. In each instance, personal property was seized from the possession of the debtor or frozen in the hands of the garnishee. That is not the situation presented by the case at bar. Rather, we deal here with property which remains in the defendant's possession unaffected by the attachment except for a minor restriction on the ease with which it can be alienated.

In *Spielman-Fond, Inc. v. Hanson's, Inc.,* 379 F.Supp. 997 (D.Ariz.1973), aff'd, 417 U.S. 901, 94 S.Ct. 2596, 41 L.Ed.2d 208 (1974), a three judge panel dealt with a challenge to the constitutionality of Arizona's mechanics' and materialmen's lien statutes, A.R.S. § 33–981, et seq. There, as here, it was asserted that the lien in effect constituted a taking. A lien, it was argued, clouds title and can amount to an absolute prohibition on the right to alienate property. Thus, by taking away the right to alienate freely, plaintiffs contended the lien deprived them of a "significant property interest." In response to that contention the court said:

"It cannot be denied that the effect of such lien may make it difficult to alienate the property. If the plaintiffs can find a willing buyer, however, there is nothing in the statutes or the liens which prohibits the consummation of the transaction. Even though a willing buyer may be more difficult to find, once he is found there is nothing to prevent plaintiffs from making the sale to him. The liens do nothing more than impinge upon economic interests of the property owner. The right to alienate has not been harmed, and the difficulties which the lien creates may be ameliorated through the use of bonding or title insurance." 379 F.Supp. at 999. See also *In Matter of Northwest Homes of Chehalis, Inc.,* 526 F.2d 505 (9th Cir. 1975), cert. denied (*Hansen, Receiver v. Weyerhaeuser Co.*) 425 U.S. 907, 96 S.Ct. 1501, 47 L.Ed.2d 758 (1976).

Noting that the plaintiff had not been deprived of the use or possession of his property as a result of the challenged lien, the court held that the filing of such a lien does not constitute a taking of a significant property interest. Accordingly, it held that

the challenged statutes do not violate the due process clause of the Fourteenth Amendment.

On the basis of the summary affirmance of *Spielman-Fond,* supra, and the Ninth Circuit's decision in *Northwest Homes,* supra, we hold that there has been no deprivation of any significant property interest as a result of the attachment in this case, and that A.R.S. § 12–1521, as applied here, did not violate the due process clause of the Fourteenth Amendment. See also, *Central Security Nat'l Bank of Lorain County v. Royal Homes, Inc.,* 371 F.Supp. 476 (E.D. Mich.1974) and *In Matter of The Oronoka,* 393 F.Supp. 1311 (N.D.Maine 1975).

In an attempt to dissipate the force of *Spielman-Fond, Inc. v. Hanson's, Inc.,* supra, First Recreation argues that it is improper to distinguish between different types of property in applying the procedural safeguards mandated by the Fourteenth Amendment. In support of this position, First Recreation states that "[t]he United States Supreme Court has made it clear that it will look to the nature and extent of deprivation of the property rights authorized under a particular statute rather than creating artificial favored classes of protected debtors or kinds of property." While we agree that the kind of property involved, whether real or personal is irrelevant, neither *Spielman-Fond,* supra, nor *Northwest Homes,* supra, turned upon the distinction between real and personal property. On the contrary, in both of those cases the court looked specifically at the nature and the extent of the deprivation of the property rights involved and concluded, as we do here, that the liens in question do not result in a substantial taking of property.

## DISSOLUTION OF THE WRIT OF GARNISHMENT

As indicated previously, on 9 December 1974 Amoroso obtained a prejudgment writ of garnishment naming the Southern Arizona Bank and Trust Company as garnishee. The writ was issued by the Clerk of the Pima County Superior Court and served by the Pima County Sheriff.

■ In response to the defendant's motion to quash that writ, the court below ruled that the question raised by its issuance was moot. That conclusion was based upon the court's determination that the garnishee-bank answered "no indebtedness" and that following that answer Amoroso failed to file an objection within the twenty day period provided by A.R.S. § 12–1589. See A.R.S. § 12–1581(A). We do not agree with that court's determination that the garnishee-bank answered "no indebtedness" and we therefore conclude that the issue is not moot.

The garnishee-bank answered as follows: "That at the time of the service of said Writ of Garnishment, Garnishee was not indebted to Defendant FIRST RECREATION CORPORATION * * * except as follows:

"Garnishee is the appointed and acting Stock Transfer Agent for Defendant, First Recreation Corporation, and Garnishee holds the sum of $329.70 in its Trust Account # 32–170000–00, which is a Trust Account established to pay the cash value of fractional shares to the shareholders of First Recreation Corporation in connection with a reverse stock split; that Garnishee is unable to determine what amount, if any, will remain in said Trust Account after the shareholders of First Recreation Corporation have claimed the amounts due them from that account."

While the garnishee-bank's answer was stated in the negative, it clearly revealed that it held the sum of $329.70 in a trust account and that a portion of that amount might remain after the shareholder's claims had been satisfied. Thus, there was a contingent indebtedness and Amoroso was not required to controvert the answer. In addition, contrary to the plaintiff's assertions, under the provisions of A.R.S. § 12–1585, First Recreation's funds were in fact frozen. *Gillespie Land and Irrigation Co. v. Jones,* 63 Ariz. 535, 164 P.2d 456 (1945).

Moreover, according to the record on appeal they were still frozen as of 2 June 1975.

Having concluded that the defendant's challenge to the constitutionality of the writ of garnishment is not moot, we hold that the procedures established by our statute, in effect at the time of the garnishment, were unconstitutional under the due process clause of the Fourteenth Amendment. That conclusion is compelled by the United States Supreme Court's decision in *North Georgia Finishing, Inc. v. Di-Chem, Inc.,* supra. In that case, as discussed previously, the court invalidated a Georgia prejudgment garnishment statute very similar to our own. In doing so it said:

> "Here, a bank account, surely a form of property, was impounded and, absent a bond, put totally beyond use during the pendency of the litigation on the alleged debt, all by writ of garnishment issued by a court clerk without notice or opportunity for an early hearing and without participation by a judicial officer." 419 U.S. at 606, 95 S.Ct. at 722, 42 L.Ed.2d at 757.

That is exactly what occurred in this case and the defendant was entitled to have the writ dissolved as a violation of due process.

The order of the trial court is affirmed insofar as it denies the defendant's motion to quash the writ of attachment, and reversed insofar as it holds the garnishment issue is moot. The case is remanded for further proceedings not inconsistent with this opinion.

STRUCKMEYER, V. C. J., and HAYS, HOLOHAN and GORDON, JJ., concur.