Sam SILVERMAN et al., Appellants,

v.

Charlie GOSSETT d/b/a Gossett Brothers et al., Appellees.

Supreme Court of Tennessee.

July 18, 1977.

Thomas V. White, Nashville, for appellants.

James L. Fuqua, Jr., Hendersonville, Richard Marshall, O. B. Hofstetter, Jr., Claude Ramer, III, George P. Linebaugh, Jr., John S. Bryant, John L. Chambers, Nashville, for appellees.

## OPINION

HARBISON, Justice.

The single issue presented on this appeal is the constitutionality of a portion of the Tennessee mechanics' and materialmen's lien statutes. Particularly at issue are T.C.A. § 64–1115 authorizing liens by subcontractors and suppliers, and § 64–1126 permitting attachments to enforce such liens. The Chancellor upheld the statutes under both the state and federal constitutions. We affirm his decision.

Five separate subcontractors and suppliers of the general contractor on a multibuilding apartment complex notified the owners, appellants here, of their claims of lien and filed copies of such notices in the Davidson County Register's Office, as required by T.C.A. §§ 64–1115, 1117. Each of them timely filed suit within the prescribed ninety days after such notice. The suits have all been tried on their merits and the liens sustained after a full evidentiary hearing, at which all parties had an opportunity to offer proof.

In their answers to the suits, the owners denied the validity of the lien claims and also raised certain factual issues by counterclaims, none of which were pursued at the trial. Further, the owners challenged the validity of part of the lien statutes, alleging that a publicly recorded lien "restrains or materially diminishes the Counter-Plaintiffs' ability to alienate or obtain credit on their property, and constitutes clouds upon their title." It was further alleged that the owners had been damaged by reason of the filing of the lien claims pursuant to allegedly unconstitutional statutory provisions. In at least some of the cases, which were consolidated by order of the trial court, answers were filed to the counterclaims, specifically denying their allegations and joining issue thereon. The owners, however, offered no testimony at the trial in support of their damage claims, or in support of their allegation that there had been a diminution of their ability to mortgage or sell their property. After the Chancellor sustained the various liens, but before permitting their enforcement, he permitted an

appeal to this Court on the constitutional issues.

The appeal might be disposed of simply upon the failure of appellants to prove their counterclaims. Issues of fact were made in the pleadings, and appellants had the burden of proof to sustain their allegations of property interference and damages. There are other factual assertions made in their briefs, to the effect that they were not financially able to take advantage of certain bond provisions contained in the lien statutes. Again, there is no evidence to support these statements.

We do not understand that appellants question the statutes insofar as they authorize a court to establish a mechanic's lien after trial, and upon final judgment. Their challenge is to the statutes authorizing the recordation of a lien claim and an initial attachment without bond, notice or a hearing.

In the many recent cases in which constitutional attacks have been made upon mechanics' lien statutes and other pre-judgment procedures, prejudice to the property owner has either been obvious, or it has been proved. In some instances suits have been dismissed, in whole or in part, because of failure of the owner to carry the burden of proof to sustain a constitutional attack. *See, e. g., Carl A. Morse, Inc. v. Rentar Industrial Development Corp.,* 56 A.D.2d 30, 391 N.Y.S.2d 425 (1977), in which validity of the New York mechanics' lien statutes was upheld, with the decision resting, in part at least, upon insufficiency of the evidence offered by the landowner.

Because of the "limited intrusion" upon the landowner's rights represented by a mechanics' lien, as contrasted to the serious consequences which would be sustained by the construction industry upon invalidation of lien statutes, the United States District Court for the Eastern District of Michigan sustained the lien statutes of that state in the case of *Central Security National Bank of Lorain County v. Royal Homes, Inc.,* 371 F.Supp. 476 (E.D.Mich.1974). It found that lack of proof of hardship by the landowner was a factor to be considered in making its determination.

We have alluded to the absence of proof of hardship or inconvenience in the instant case, which makes the claim of the appellants almost theoretical. The lien claims sustained in these five cases amount to $33,-364.07. The enterprise conducted by the landowners is a multi-million dollar complex, the record reflecting a construction loan alone of $1,700,000.00. We certainly cannot take judicial notice that the owner of such a complex would have much difficulty in selling or mortgaging his property in the face of these relatively insignificant lien claims, and it is difficult to believe that an adequate indemnity bond or escrow arrangement could not be effected so as to permit ready encumbrancing or conveyancing. This, of course, might not be true in all cases involving mechanics' liens, depending upon the facts. In the present case, not only are the lien claims small, but throughout the litigation, the landowners have remained in possession of their property, including the improvements, labor and materials supplied by the lien claimants, with complete freedom to lease or rent the same and receive the income therefrom.

Even if we overlook the insufficiency of the landowners' evidence, however, we are of the opinion that their constitutional claims are not well taken.

Mechanics' lien statutes in favor of subcontractors and suppliers have been in force in Tennessee since at least 1845. Their validity was upheld in cases decided during the latter part of the nineteenth and early twentieth centuries. They were explicitly sustained against due process attacks, under both the state and federal constitutions, in *Cole Manufacturing Co. v. Falls,* 90 Tenn. 466, 16 S.W. 1045 (1891). *See also Green v. Williams,* 92 Tenn. 220, 21 S.W. 520 (1893); *Ruston v. Perry Lumber Co.,* 104 Tenn. 538, 58 S.W. 268 (1900).

There have been a number of cases in other states and in the federal courts following certain recent holdings of the United States Supreme Court in connection with prejudgment seizure of chattels, wages and other personal property. It is upon these

cases that appellants here, like similar claimants in other jurisdictions, predicate their contentions that the Tennessee statutes are lacking in essential due process requirements.

In four well-known and widely discussed decisions between 1969 and 1975, the United States Supreme Court examined pre-judgment procedures authorized by statutes in a number of states. In three of these cases the statutes were held invalid, and in one the statute was sustained. In *Sniadach v. Family Finance Corp.*, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969), the pre-judgment seizure of wages by garnishment as provided by Wisconsin statutes was held unconstitutional. The replevin statutes of Florida and Pennsylvania were stricken in the case of *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972). In *Mitchell v. W. T. Grant Co.,* 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974), personal property sequestration statutes from Louisiana were held valid, but a garnishment statute of Georgia was held unconstitutional in *North Georgia Finishing, Inc. v. Di-Chem, Inc.,* 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975).[1]

These cases led to revision of the statutes in many states dealing with pre-judgment seizure or impoundment of personal property. They also led to litigation involving statutes pertaining to real property, such as those providing for attachments and liens. The decisions are not limited in their effect to distinctions between various types of property, such as real and personal, but turn upon the extent of deprivation of property rights without prior notice and judicial review.

To date, insofar as our research reveals, the courts in only two states have found their respective mechanics' lien statutes unconstitutional. In each of these the statutory scheme differed from, and was considerably more drastic, from the standpoint of the landowner, than that of Tennessee. In

the case of *Barry Properties, Inc. v. Fick Bros. Roofing Co.,* 277 Md. 15, 353 A.2d 222 (1976), the Maryland Court of Appeals struck portions of the mechanics' lien statutes of that state for lack of adequate provisions as to notice and a hearing. Like the present cases, however, that case had been tried on its merits before being appealed, and the majority of the Court sustained the lien involved, since it had been ultimately sustained after a trial and final judgment. Further, in that case, there was a stipulation that the landowner had been prevented from obtaining the balance of its construction loan by reason of the lien claim and had also been prevented from either closing a permanent mortgage or obtaining a second mortgage on the equity in its property. There is no such showing in the record before us.

In the course of its opinion, the Maryland Court noted that the mechanics' lien statutes of Arizona had been upheld in *Spielman-Fond, Inc. v. Hanson's, Inc.,* 379 F.Supp. 997 (D.Ariz.1973), and that this decision of a district court in Arizona had been affirmed summarily by the United States Supreme Court at 417 U.S. 901, 94 S.Ct. 2596, 41 L.Ed.2d 208 (1974). The Maryland Court concluded, however, that the Arizona statutes were materially different from those of Maryland, in that the Arizona statutes required that a materialman give notice and file suit within a much shorter time than was required in Maryland, and the Arizona lien could be discharged upon the filing of a bond by the landowner.

The Supreme Court of Connecticut found that the mechanics' lien statutes of that state also were constitutionally deficient in the case of *Roundhouse Construction Corp. v. Telesco Masons Supplies Co.,* 168 Conn. 371, 362 A.2d 778 (1975). The Connecticut statutes, however, provided for a lien of as much as four years duration, and the Court

---

1. For discussions of these cases, *see generally* Cate & Robinson, *Due Process and Creditors' Remedies: From* Sniadach and Fuentes *To* Mitchell *and Beyond,* 28 Rutgers L.Rev. 541 (1975); Clark & Landers, Sniadach, Fuentes *and Beyond: The Creditor Meets the Constitution,* 59 Va.L.Rev. 355 (1973); 25 Vand.L.Rev. 1251 (1972); 28 Vand.L.Rev. 908 (1975).

found "most conspicuously absent" any provision for a timely hearing by the landowner either before or after the recording of the lien notice. The Court said:

"The statutes allow the lien to continue for two years without any further action on the part of the lienor, during which time the owner is without recourse in the courts to contest the merits of the claim underlying the lien." 362 A.2d at 784.

Like the Maryland Court, the Connecticut Court noted that the Arizona statutes permitted a lien to exist for no more than six months unless suit was filed within that time for enforcement. The Court said:

"Such a provision would seem to offer the bare minimum of due process protection consistent with the extent of deprivation present." 362 A.2d at 783.[2]

The Tennessee statutes, like those of Arizona, permit the existence of a lien without suit by a subcontractor or materialman for much shorter periods than the Maryland or Connecticut statutes. T.C.A. § 64–1115 requires the lien claimant to notify the owner within ninety days after completion of the work or expiration of his contract and requires the filing of suit within ninety days from the date of such notice. We have been cited to no authority holding that these statutory periods are unreasonable or are violative of due process. They are certainly comparable to the periods permitted under the Arizona statutes which were upheld in the *Speilman-Fond* case, *supra*.[3]

Contrary to the holdings in Maryland and Connecticut, the majority of state courts which have considered the matter have sustained their mechanics' lien statutes. We have already alluded to a case from New York, *Carl A. Morse, Inc. v. Rentar Indus-* *trial Development Corp.,* 56 A.D.2d 30, 391 N.Y.S.2d 425 (1977). *See also Tucker Door & Trim Corp. v. Fifteenth Street Co.,* 235 Ga. 727, 221 S.E.2d 423 (1975). And in *Connolly Development, Inc. v. Superior Court of Merced County,* 17 Cal.3d 803, 132 Cal.Rptr. 477, 553 P.2d 637 (1976), the California Supreme Court upheld not only the mechanics' lien statutes but also the unique "stop notice" statutes of that state having to do with the disbursement of construction loan proceeds. *See also First Recreation Corp. v. Amaroso,* 113 Ariz. 572, 558 P.2d 917 (1976), sustaining state statutes dealing with pre-judgment levies upon real property.

In addition to the *Speilman-Fond* case, *supra,* a number of other federal decisions have sustained state statutory provisions involving mechanics' liens or similar procedures. *See In re Northwest Homes of Chehalis, Inc.,* 526 F.2d 505 (9th Cir. 1975), *cert. denied,* 425 U.S. 907, 96 S.Ct. 1501, 47 L.Ed.2d 758 (1976); *Central Security National Bank of Lorain County v. Royal Homes, Inc.,* 371 F.Supp. 476 (E.D.Mich. 1974); *Cook v. Carlson,* 364 F.Supp. 24 (D.S. D.1973); *Ruocco v. Brinker,* 380 F.Supp. 432 (S.D.Fla.1974).

Many of these decisions have been based upon the obvious distinctions between the seizure, impoundment or repossession of wages and chattels, which were involved in the *Sniadach, Fuentes,* and *North Georgia Finishing, Inc.* cases, *supra,* and the mere filing of a record claim of lien and the attachment of real property which are involved in a mechanics' lien claim. In the latter instance, the property owner is not disturbed in his possession, enjoyment or income. The filing of a lien notice can, of

---

**2.** The Connecticut decision was appealed to the United States Supreme Court, which vacated the judgment with directions that the state court specify whether its decision rested upon federal or state constitutional principles. 423 U.S. 809, 96 S.Ct. 20, 46 L.Ed.2d 29 (1975). The Connecticut Court responded to the remand by stating that it had based its decision upon both constitutions. *See* 170 Conn. 155, 365 A.2d 393 (1976). The Supreme Court of the United States thereupon denied certiorari upon the basis that the Connecticut decision rested upon an adequate state ground, rather than the federal constitution, although even then three members of the Court felt that certiorari should be granted. *See* 97 S.Ct. 246 (1976).

**3.** The Arizona statutes require recordation of a lien claim by subcontractors within sixty days after project completion, Ariz.Rev.Stats. § 33–993, but allow six months thereafter for suit. Ariz.Rev.Stats. § 33–998.

course, operate as a cloud upon the record title to his property and may, as a result, impair, to some extent, his ability to mortgage or sell it. We have already mentioned that such impairment has not been demonstrated in the present case, but in the cases which have considered the issue, this impairment has been deemed to be slight or incidental, compared to the drastic consequences that a lien claimant may suffer if he is not permitted to file and perfect a mechanics' lien. The public policy of the state represented in the lien statutes is a strong one, and ought not to be impaired or invalidated because of the relatively slight inconvenience which a landowner may suffer by reason of having a lien claim filed.

A number of the cases discussed above have held that the landowner has not suffered a sufficiently significant deprivation of property rights by reason of a pre-judgment lien notice and attachment to justify invalidation of state statutes under the rationale of *Fuentes* and the related Supreme Court decisions. Other courts have concluded that there is or may be a sufficient cloud upon record title to amount to a significant deprivation of property rights, but that nevertheless, upon balancing the conflicting interests involved, the lien statutes are constitutional, particularly in light of remedial or preventive procedures which may be available to the landowner. Typical of these decisions is the California *Connolly Development, Inc.* case, *supra*.

We are of the opinion that the Tennessee mechanics' lien statutes do not permit the deprivation of sufficiently significant property rights of the landowner without notice or hearing to offend either the federal or state constitutional due process provisions. We also conclude that the procedural provisions of the statutes meet due process standards under both constitutions. The periods within which lien claims must be recorded and suit filed are short. The landowner is authorized both by contract and by statute to require an adequate performance

bond from his general contractor to protect against mechanics' liens. T.C.A. § 64–1138. He may make written demand upon a lien claimant to commence action to enforce his lien, and the lienor generally must either commence action or file a claim in a creditors' proceeding within sixty days or forfeit his lien. T.C.A. § 64–1130. Further, the landowner by executing an indemnity bond may free his property from the lien claim. T.C.A. § 64–1144.[4] In addition, T.C.A. § 64–1120 expressly limits the amount of claims for which liens can be sustained, and T.C.A. § 64–1141 provides for disallowance entirely if a court finds that a lienor has willfully and grossly exaggerated his claim.

We also feel it appropriate to observe that in the numerous cases involving lien claims in this state, the courts have construed the statutes most strictly in favor of the landowner. Lien claimants have been denied relief for failure to comply, literally, with each of the statutory requirements. Illustrative is the recent case of *Eatherly Construction Co. v. DeBoer Construction Co.*, 543 S.W.2d 333 (Tenn.1976), in which a lien claimant was denied relief because he did not re-attach property within a specified time after completion of the work, despite the fact that he had already previously attached it in the same action. In the case of *General Electric Supply Co. v. Arlen Realty & Development Corp.*, 546 S.W.2d 210, 213 (Tenn.1977), the Court said:

"Because of the unusual relief afforded to a lien claimant, and the effect which a materialman's lien may have upon rights of third parties, the courts have properly construed the lien statutes strictly, almost rigorously, but in our opinion the statutes should not be construed so harshly as to frustrate the legislative purpose in authorizing such liens."

In that case the Court stated that it had no disposition to depart from strict construction, but it did overrule an earlier case imposing procedural requirements greater than those expressly contained in the statutes.

---

4. By recent amendment to the statutes, the landowner may force lien claimants to file their claims within ten days by recording a notice of completion in the Register's Office. T.C.A. §§ 64–1145 et seq.

We are of the opinion that the procedures for perfecting and enforcing mechanics' liens in this state strike a proper balance between the interests of those engaged in the building and construction trades on the one hand and landowners on the other. The statutory provisions, in our opinion, meet the due process requirements of both the state and federal constitutions.

The judgment of the Chancery Court is affirmed, and the cases are remanded to that court for such further proceedings as may be appropriate.

COOPER, C. J., and FONES, HENRY and BROCK, JJ., concur.