ROUNDHOUSE CONSTRUCTION CORPORATION *v.* TELESCO
MASONS SUPPLIES COMPANY, INC., ET AL.

HOUSE, C. J., COTTER, LOISELLE, MACDONALD and BOGDANSKI, Js.

Argued February 5—decision released April 22, 1975

*David S. Grossman,* with whom, on the brief, was *Sidney Burger,* for the appellant (plaintiff).

*Herbert V. Camp, Jr.,* for the appellees (defendants Fischer).

*William W. Sprague* filed a brief as amicus curiae.

House, C. J.  This action was brought by the plaintiff to foreclose a mechanic's lien on the property of the defendants Richard P. and Bonnie R. Fischer. The Fischers contracted with the plaintiff, Roundhouse Construction Corporation, for the construction of a geodesic dome for a residence on real property owned by them in the town of Ridgefield.  After construction had begun and after some payments had been made on the contract, the Fischers ceased making payments, and the structure is incomplete. On November 7, 1973, the plaintiff filed a mechanic's lien on the Fischer property and by complaint dated January 24, 1974, brought the present action to foreclose that lien.  Also named as defendants in this action were four subcontractors who had filed mechanics' liens on the Fischer property.

The Fischers, hereinafter referred to as the defendants, denied the substantive portions of the

plaintiff's complaint, asserted certain special defenses including a claim that the plaintiff's workmanship was unsatisfactory and that the structure had collapsed, counterclaimed against the plaintiff, and cross-complained against the four other lienors. One of the grounds set forth in the cross complaint and counterclaim was that the mechanics' liens were invalid in that they constituted a taking of the defendants' property without due process of law contrary to the provisions of the fourteenth amendment to the United States constitution. The Fischers then moved the court, on the same constitutional basis, for an order to show cause why an injunction should not be issued against maintaining the liens. An order to show cause was issued to all the lienors. The parties stipulated to the facts which we have hereinbefore briefly summarized and agreed that the Superior Court should determine the sole issue of the constitutional validity of the mechanics' liens on the Fischer property. The court, filing a well-reasoned memorandum of decision, found the Connecticut mechanic's lien statutes unconstitutional as violative of the due process clauses of the fourteenth amendment to the constitution of the United States and article first, § 10, of the constitution of Connecticut and rendered judgment enjoining the plaintiff and the four lienor defendants from maintaining their mechanics' liens on the Fischer property, and declaring the liens to be invalid. The present appeal was taken solely by the plaintiff. The four lienor defendants against whom judgment was also rendered did not appeal.

The decisive issue on the appeal is whether the Connecticut statutory procedure governing mechanics' liens is unconstitutional because it does not comply with the due process of law requirements of

the fourteenth amendment to the federal constitution and article first, § 10, of the Connecticut constitution. "We have held that these provisions of the federal and state constitutions have the same meaning and impose similar constitutional limitations." *Cyphers* v. *Allyn,* 142 Conn. 699, 703, 118 A.2d 318; *Katz* v. *Brandon,* 156 Conn. 521, 537, 245 A.2d 579. The appeal raises for the first time in this court a question as to the constitutionality of Connecticut's mechanic's lien procedure. The United States Supreme Court, however, has recently had occasion to consider the constitutionality of the attachment, garnishment, sequestration and mechanic's lien procedures in several states, and the decisions of that court guide and must control our decision.

The Connecticut mechanic's lien statutes are found in §§ 49-33 through 49-40a of the General Statutes. While the statutory provisions are too lengthy to be repeated here in their entirety, they provide, in brief, that "[i]f any person has a claim for more than ten dollars for materials furnished or services rendered in the construction, raising, removal or repairs of any building or any of its appurtenance . . . and such claim is by virtue of an agreement with or by consent of the owner of the land upon which such building is being erected or has been erected or has been moved, . . . such building, with the land on which it stands . . . shall be subject to the payment of such claim. Such claim shall be a lien on such land, building and appurtenances . . . ." General Statutes § 49-33.

Section 49-34 provides, in pertinent part, that "[n]o such lien shall be valid, unless the person performing such services or furnishing such mate-

rials, within sixty days after he has ceased to do so, lodges with the town clerk in the town in which such building . . . is situated a certificate in writing, describing the premises, the amount claimed as a lien thereon and the date of the commencement of the performance of services or furnishing of materials, stating that the amount claimed is justly due, as nearly as the same can be ascertained, and subscribed and sworn to by the claimant; which certificate shall be recorded by the town clerk with deeds of land." Section 49-35 requires that subcontractors and materialmen whose written contracts with the original contractor have not been assented to in writing by the other party to the original contract and who claim mechanics' liens must give notice to the owner of the property against which the liens are claimed. This requirement of notice, however, does not apply to a principal contractor such as the present plaintiff. Section 49-36 provides that the amount of the lien on any building or its appurtenances cannot exceed the amount agreed upon in the contract for such building and its appurtenances, and § 49-37 provides that the owner of the real estate subject to the lien may apply to the Superior Court for dissolution of the lien upon substitution of a bond with surety. In addition, no mechanic's lien shall remain in force for a period longer than four years after it has been perfected unless the lienor commences an action to foreclose the lien within two years from the date the lien was filed, and provision is made for the discharge of the lien on the records if no action is brought to foreclose it within two years from the date it was perfected. General Statutes § 49-39. Section 49-51 permits any person having an interest in any real estate "described in any certificate of

lien which lien is invalid but not discharged of record" to give notice to the lienor to discharge the lien and, if such request is not complied with in thirty days, to bring his complaint to the court which would have jurisdiction of the foreclosure of such lien, if valid, claiming such discharge. That court may adjudge the validity or invalidity of the lien, and a certified copy of a judgment of invalidity recorded on the land records shall fully discharge it.

The defendants argue that this mechanic's lien statutory scheme in Connecticut operates to deprive them of their property without the due process of law guaranteed them by the federal and state constitutions. More specifically, they assert that the Connecticut statutes fail to provide for prior notice to property owners such as themselves and an opportunity to be heard at a meaningful time and in a meaningful manner and that, under procedural due process standards, the absence of such provisions renders the procedure unconstitutional.

It is fundamental that property cannot be taken without procedural due process as guaranteed by the fourteenth amendment to the constitution of the United States and article first, § 10, of the constitution of Connecticut. For more than a century, the central meaning of procedural due process has been clear. "Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified." *Baldwin* v. *Hale,* 68 U.S. 223, 233, 17 L. Ed. 531; *Windsor* v. *McVeigh,* 93 U.S. 274, 23 L. Ed. 914; *Hovey* v. *Elliott,* 167 U.S. 409, 17 S. Ct. 841, 42 L. Ed. 215; *Grannis* v. *Ordean,* 234 U.S. 385, 34 S. Ct. 779, 58 L. Ed. 1363. It is equally fundamental that the right to notice and an opportunity to be heard "must

be granted at a meaningful time and in a meaningful manner." *Armstrong* v. *Manzo,* 380 U.S. 545, 552, 85 S. Ct. 1187, 14 L. Ed. 2d 62. The United States Supreme Court has reiterated that these fundamental requirements apply to the deprivation of "any significant property interest." *Boddie* v. *Connecticut,* 401 U.S. 371, 379, 91 S. Ct. 780, 28 L. Ed. 2d 113. In *Bell* v. *Burson,* 402 U.S. 535, 539, 91 S. Ct. 1586, 29 L. Ed. 2d 90, the Supreme Court held that the suspension of drivers' licenses "adjudicates important interests of the licensees" and that "[i]n such cases the licenses are not to be taken away without that procedural due process required by the Fourteenth Amendment." The court noted that "[t]his is but an application of the general proposition that relevant constitutional restraints limit state power to terminate an entitlement whether the entitlement is denominated a 'right' or a 'privilege'" and held (p. 542) that "it is fundamental that except in emergency situations . . . due process requires that when a State seeks to terminate an interest such as that here involved, it must afford 'notice and opportunity for hearing appropriate to the nature of the case' *before* the termination becomes effective."

This effective opportunity to be heard is the gravamen of the currently accepted standards of procedural due process in the area of property rights as now prescribed in the United States Supreme Court landmark cases of *Fuentes* v. *Shevin,* 407 U.S. 67, 92 S. Ct. 1983, 32 L. Ed. 2d 556; rehearing denied, 409 U.S. 902, 93 S. Ct. 177, 34 L. Ed. 2d 165; *Lynch* v. *Household Finance Corporation,* 405 U.S. 538, 92 S. Ct. 1113, 31 L. Ed. 2d 424, rehearing denied, 406 U.S. 911, 92 S. Ct. 1611, 31 L. Ed. 2d 822; and *Sniadach* v. *Family Finance Cor-*

*poration,* 395 U.S. 337, 89 S. Ct. 1820, 23 L. Ed. 2d 349. It was these decisions, spelling out the requirements of due process of law in creditor proceedings, which led to the passage by the General Assembly of Public Acts 1973, No. 73-431, entitled "An Act Concerning Prejudgment Remedies," now chapter 903a of the General Statutes. See 16 Conn. H. Proc., Pt. 12, 1973 Sess., pp. 5834–42; *E. J. Hansen Elevator, Inc.* v. *Stoll,* 167 Conn. 623, 356 A.2d 893. That act, however, has no application to the enforcement of mechanics' liens. By its terms, it is limited to "any remedy or combination of remedies that enables a person by way of attachment, foreign attachment, garnishment or replevin to deprive the defendant in a civil action of, or affect the use, possession or enjoyment by such defendant of, his property prior to final judgment but shall not include a temporary restraining order."

In *Sniadach,* the court held that the prejudgment garnishment of wages without notice and a prior hearing violated the fundamental principles of due process; and, in *Fuentes,* the court struck down the replevin statutes of Florida and Pennsylvania as violative of the due process clause of the fourteenth amendment because they failed to provide for a hearing before the repossession of chattels. In both cases the court concluded that, under the statutes in question, the prejudgment deprivation of property, i.e., the actual dispossession of wages or personalty, was so severe that notice and a meaningful opportunity to be heard prior to the taking were required by the due process clause of the fourteenth amendment. *Fuentes* v. *Shevin,* supra, 96–97; *Sniadach* v. *Family Finance Corporation,* supra, 342.

The court appeared to retreat somewhat from the seemingly strict requirement of *Fuentes* v. *Shevin,*

supra, that the hearing take place prior to the dispossession of personalty, when in a subsequent decision it upheld the constitutionality of the Louisiana sequestration statute. *Mitchell* v. *W. T. Grant Co.,* 416 U.S. 600, 94 S. Ct. 1895, 40 L. Ed. 2d 406. That statute allows to a holder of a mortgage or lien a writ of sequestration authorizing a constable to sequester and take possession of goods—in order to forestall encumbrance or alienation of the property subject to the mortgage or lien—without requiring that a hearing be held prior to the taking of the property from the debtor. The court noted two principal provisions present in the Louisiana statute which satisfied the requirements of procedural due process and thus obviated the necessity of a prior hearing. The first of these is that although the application for the writ is granted ex parte and without prior notice to the debtor, the writ itself issues only on the order of a judge and on a specific factual showing of the nature of the claim. Id., 606. Secondly, and more importantly, the Louisiana statute allows the debtor to seek immediate dissolution of the writ unless the creditor proves the grounds upon which the application for the writ was granted. Ibid. In addition, the party seeking the writ must furnish security for the payment of any damages the debtor may sustain when the writ is obtained wrongfully. Ibid. Such a procedure, the court concluded, "effects a constitutional accommodation of the conflicting interests of the parties." Id., 607. The court expressly refrained from overruling *Fuentes* and *Sniadach* and sought to distinguish those cases on the factual situations involved. *Mitchell* v. *W. T. Grant Co.,* supra, 614, 615.

In a very recent case, *North Georgia Finishing, Inc.* v. *Di-Chem, Inc.,* 419 U.S. 601, 95 S. Ct. 719,

42 L. Ed. 2d 751, the court struck down a Georgia prejudgment garnishment statute in an opinion which substantially reaffirmed *Fuentes* v. *Shevin,* supra. Significantly, the court stated that the Georgia statute was not saved by the ruling in *Mitchell* v. *W. T. Grant Co.,* supra, since the statute possessed none of the characteristics of the Louisiana sequestration statute which we have noted above. *North Georgia Finishing, Inc.* v. *Di-Chem, Inc.,* supra, 606–607. It is also significant to note that although the *North Georgia Finishing* decision relied heavily on *Fuentes,* the court did not speak in terms of procedural due process as requiring a prior hearing, as it did in *Fuentes,* but, rather, an "early hearing." The difference is substantial. The clear indication now is that in testing whether a lien or sequestration procedure complies with the requirements of due process it will be examined in its entirety, and the lack of a provision for a prior hearing in and of itself will not be constitutionally fatal if other saving characteristics are present.

Although the United States Supreme Court has not as yet spoken definitively on the subject of the due process requirements of mechanic's lien statutes, it has affirmed without opinion a case involving the Arizona mechanic's lien statute. *Spielman-Fond, Inc.* v. *Hanson's, Inc.,* 379 F. Sup. 997 (D. Ariz.), aff'd, 417 U.S. 901, 94 S. Ct. 2596, 41 L. Ed. 2d 208. In that case, a three-judge United States District Court upheld the constitutionality of the Arizona statute on the ground that mechanics' and materialmens' liens did not amount to a taking significant enough for due process to require notice and an opportunity to be heard prior to the filing of the lien. Id., 999–1000. It is to be noted, however, that the Arizona statute restricts

the validity of a mechanic's lien to no longer than six months unless an action is brought to foreclose it within that period. Ariz. Rev. Stat. Ann. § 33-998 (1974). Such a provision would seem to offer the bare minimum of due process protection consistent with the extent of deprivation present.

Other lower federal courts have sustained the constitutional validity of questioned mechanic's lien procedures. In *Cook* v. *Carlson,* 364 F. Sup. 24 (S.D. S.D.), a federal district court in South Dakota upheld the mechanic's lien statute of that state, noting that the deprivation of property resulting from a mechanic's lien did not actually deprive the owner of the use or possession of his property to the extent present in *Fuentes* and *Sniadach* and concluding that notice and a hearing prior to filing of the lien are not required. That court used a balancing test, weighing, on the one hand, the extent of the deprivation involved and, on the other, the nature of the creditor's interest to be protected, and the court noted (p. 27) that the deprivation caused by the South Dakota mechanic's lien statute was mitigated by the provision in that statute which allowed the owner of the property subject to the lien to "force an expeditious adjudication on the merits, without cost to him, by demanding that the lien be foreclosed, whereupon the lienholder must commence foreclosure proceedings within thirty days or forfeit the lien."

In still another recent case, *Ruocco* v. *Brinker,* 380 F. Sup. 432 (S.D. Fla.), a Florida mechanic's lien statute withstood a constitutional attack on the ground of lack of procedural due process. Relying substantially on *Mitchell* v. *W. T. Grant Co.,* 416 U.S. 600, 94 S. Ct. 1895, 40 L. Ed. 2d 406, the court

concluded that there is now a flexible test for determining the existence of due process and that a prior hearing is no longer constitutionally mandated in every case. *Ruocco* v. *Brinker,* supra, 437. The court refused to classify the deprivation of property rights under mechanic's lien laws as de minimis, but, viewing the Florida statute in its entirety, found that it constitutionally accommodated the rights and interests of the parties. Ibid. Material factors in the court's analysis of the statute included the fact that although the statute did not require a hearing prior to the filing of the lien it did provide that a mechanic's or materialmen's lien may be discharged upon failure to enforce it within one year, and, in addition, the owner of property subject to a lien can force the lienor to bring suit within sixty days or the owner may institute a proceeding requiring the lienor to show cause why his lien should not be enforced by action or vacated and cancelled of record. Id., 434.

We have discussed these cases at some length because the precise constitutional due process requirements in legal sequestration procedures have not as yet been definitively prescribed by the United States Supreme Court. The general requirements, however, appear from an analysis of these cases, and it is clear that the present Connecticut mechanic's lien procedures do not meet those requirements of constitutional due process. Under Connecticut procedure, the party claiming the lien is not required to post any bond or provide any surety to protect the owner of the property subjected to the lien against damages from an unsupportable lien. Compare *Mitchell* v. *W. T. Grant Co.,* 416 U.S. 600, 94 S. Ct. 1895, 40 L. Ed. 2d 406; *North Georgia Finishing, Inc.* v. *Di-Chem, Inc.,* 419 U.S. 601, 95

S. Ct. 719, 42 L. Ed. 2d 751. The filing and perfection of the lien may be done by a claimant entirely ex parte, without authorization, supervision or control by a judicial officer. Compare *Mitchell* v. *W. T. Grant Co.*, supra. The certificate itself, which is recorded in the town clerk's office, is statutorily required to contain only a description of the subject premises, the date work was commenced, the amount claimed, and a statement that the amount claimed is justly due. General Statutes § 49-34. Such a certificate is a conclusory statement, totally devoid of any substantive underlying facts. Compare *Ruocco* v. *Brinker*, 380 F. Sup. 432 (S.D. Fla.).

Most conspicuously absent from the Connecticut procedure is any provision whatsoever for any sort of a timely hearing, either before or after the recording of the lien, which would give the property owner an opportunity to be heard or require the lienor to justify his lien. The statutes allow the lien to continue for two years without any further action on the part of the lienor, during which time the owner of the property is without recourse in the courts to contest the merits of the claim underlying the lien. Compare *Mitchell* v. *W. T. Grant Co.*, supra; *Cook* v. *Carlson*, 364 F. Sup. 24 (S.D. S.D.). As we have noted, the prejudgment remedy procedures for a judicial determination and a hearing provided by Public Acts 1973, No. 73-431 (General Statutes, c. 903a) were not made applicable to the enforcement of mechanics' liens, nor is there any statutory provision for a hearing on and discharge of an excessive lien such as exists in the case of excessive attachments. See General Statutes §§ 52-301, 52-302. The provision in General Statutes § 49-37 for the dissolution of a mechanic's lien upon the substitution of a bond does not afford adequate

relief, since the authority of the court is limited to the issuance of an order dissolving the lien only upon the substitution of a bond "in such amount as a court of competent jurisdiction may adjudge to have been secured by such lien." In such a proceeding, "[t]he office of the judge before whom the application is pending, is to discover the amount of the plaintiff's apparent claim, and not to pass upon its legal validity or to weigh the chances of recovery upon it." *Sachs* v. *Nussenbaum,* 92 Conn. 682, 688, 104 A. 393.

The plaintiff argues that the "taking" of the property under a mechanic's lien statute is de minimis. It is true that the deprivation which results from the filing of a mechanic's lien is not as obvious or as great as the dispossession of property under the statutes struck down in *Fuentes* v. *Shevin,* 407 U.S. 67, 92 S. Ct. 1983, 32 L. Ed. 2d 556, and *Sniadach* v. *Family Finance Corporation,* 395 U.S. 337, 89 S. Ct. 1820, 23 L. Ed. 2d 349, but the recording of a mechanic's lien, while it does not prevent alienation of the property, does, as a practical matter, severely restrict the opportunity for and possibility of its alienation. As the United States Supreme Court observed in *Fuentes* v. *Shevin,* supra, 86, "[a]ny significant taking of property by the State is within the purview of the Due Process Clause." Referring to this statement from *Fuentes* in *North Georgia Finishing, Inc.* v. *Di-Chem, Inc.,* 419 U.S. 601, 95 S. Ct. 719, 42 L. Ed. 2d 751, the United States Supreme Court continued (p. 606): "Although the length or severity of a deprivation of use or possession would be another factor to weigh in determining the appropriate form of hearing, it was not deemed to be determinative of the right to a hearing of some sort. Because the official seizures

had been carried out without notice and without opportunity for a hearing or other safeguard against mistaken repossession, they were held to be in violation of the Fourteenth Amendment."

We are well aware of the long history of mechanics' liens in this state, dating back to the Public Acts of 1836, chapter 76. We have recognized the remedial intent of the law governing a mechanic's lien, which is the creature of statute, and have consistently construed the statute "so as to reasonably and fairly carry out its remedial intent." *Parsons* v. *Keeney,* 98 Conn. 745, 748, 120 A. 505; *City Lumber Co.* v. *Borsuk,* 131 Conn. 640, 645, 41 A.2d 775. We are not unmindful of the presumption of constitutionality which attaches to a statutory enactment and the burden which rests upon a party asserting its invalidity to establish not only that it is unconstitutional beyond a reasonable doubt but that its effect or impact on him adversely affects a constitutionally protected right which he has. *Lublin* v. *Brown,* 168 Conn. 212, 219, 362 A.2d 769; *Adams* v. *Rubinow,* 157 Conn. 150, 152, 251 A.2d 49. Nevertheless, we must conclude that the absence of a statutory provision for a hearing for the defendants "at a meaningful time and in a meaningful manner"; *Armstrong* v. *Manzo,* 380 U.S. 545, 552, 85 S. Ct. 1187, 14 L. Ed. 2d 62; has deprived them of their constitutional rights to due process of law as those rights have been recently enunciated by the United States Supreme Court. We, accordingly, find no error in the judgment of the Superior Court.

There is no error.

In this opinion the other judges concurred.