**Thomas A. SHELDEN, d/b/a Atria Architects, Intervenor–Appellant,**

**v.**

**PLATTE VALLEY SAVINGS, a federal savings and loan association, by its Conservator, the RESOLUTION TRUST CORPORATION, Defendant–Appellee.**

**No. 89CA0797.**

Colorado Court of Appeals, Division III.

May 17, 1990.

Rehearing Denied June 28, 1990.

Jones, Meiklejohn, Kehl & Lyons, David E. Driggers, Duane H. Gall, Denver, for intervenor-appellant.

Gorsuch, Kirgis, Campbell, Walker & Grover, Peter R. Nadel, Kathleen M. Tafoya, Denver, for defendant-appellee.

Opinion by Judge STERNBERG.

Thomas A. Shelden, d/b/a Atria Architects, appeals the dismissal of a mechanic's lien he filed for work performed on an office building which was subsequently taken over by Platte Valley Savings. We reverse.

Shelden contracted with the then owner of the property on one standard AIA contract (form No. B141) to provide architectural services for an office/warehouse project which was to consist of two adjacent buildings. The first building was substantially completed, but the other had not been started when the project ran into financial difficulty. A supplier filed suit against the project's general contractor and the developers, seeking to foreclose its mechanic's lien and asserting other claims. Eventually, about 20 suppliers were joined in the suit.

Shelden moved successfully to intervene in that proceeding, asserting both a mechanic's lien and claims for personal liability against the developers. Platte Valley Savings, successor in interest to the original lender for the project, foreclosed in February 1986.

The trial court referred the case to a referee for trial on the mechanics' lien issues only. Related mechanics' lien claims were consolidated with this one. For a combination of reasons, the only parties ultimately contesting the lien issues were Shelden and Platte Valley.

After taking evidence, the referee issued findings of fact, conclusions of law, and proposed orders, recommending dismissal of Shelden's lien. Shelden unsuccessfully took exception to various findings of the referee. The district court adopted the referee's findings and conclusions and entered a final judgment on the Shelden claims. This appeal followed.

## I.

Shelden contends that several of the critical findings and conclusions of the referee and the trial court were erroneous. We agree.

■ Among the findings of the referee that were adopted by the trial court are that the last work performed by Shelden which could be lienable under the statute was performed more than four months prior to the May 2, 1986, filing of Shelden's lien claim. Work performed by Shelden on January 2, January 4, and June 4, 1986, was found to be "work performed, as extras, after the project was completed, for financing information, preparing copies, projection of tenant finish for a prospective tenant." However, the referee held this work to be of a "minor nature, representing a very small amount of money, and so trivial as to have no substance" and that the work "was not the kind of work for which a mechanics lien claim could be imposed."

■ We disagree as a matter of law with the conclusions of the referee and of the trial court that the type of work involved was not that for which a mechanic's lien claim could be imposed. Similarly, the conclusion that the work was "an add on to the basic contract" is clearly erroneous.

Under his contract with the owner, Shelden was obligated to perform as "basic services" just the type of work he did here. Section 38–22–101(1), C.R.S. (1982 Repl.Vol. 16A) makes provision for liens for architects performing services such as were performed here. The only testimony presented on the issue was that of Shelden and his project manager and was to the effect that the work constituted "basic services" under the contract which was to be performed by the architectural firm and was done at the request of the owner. Thus, under the plain language of the contract itself and of the only evidence presented on the issue, instead of being "extras," the work was part of the basic services provided by the architect to be covered by his fees.

Furthermore, contrary to the referee's finding, the evidence was uncontroverted, and indeed, the pleadings admitted that the entity with which Shelden contracted was the owner of the property.

■ We also disagree that the concept of "triviality" of the work has any applicability here. Section 38–22–109(7), C.R.S. (1982 Repl.Vol. 16A), and its use of the term "trivial," is not involved. That statute prevents a lien claimant from extending the filing period by doing work related to a "trivial imperfection in or omission from" work or construction performed on a project that would otherwise be deemed completed. *See Kehn v. Spring Creek Village I*, 38 Colo.App. 550, 563 P.2d 969 (1977).

Here, the contract had not been completed. Shelden was performing tasks at the request of the owner that were required of him under the contract which had not been terminated.

## II.

■ Shelden gave notice of his lien by preparing and signing a legal stationer's form. The notary's jurat on the form certified that the document had been "sub-

scribed and sworn to." Thereafter appears the date of signature, the date of expiration of the notary's commission, the notarial seal and the notary's signature.

However, the form also contained a place for verification, *i.e.,* a certification that the signer had "read the within statement of lien and abstract of indebtedness and know the contents thereof; and that the same is true and correct, to the best of my knowledge, information and belief, and is made on behalf of the claimant." Shelden did not sign on the signature line provided on that portion of the form. Platte Valley asserts that this failure to sign the verification rendered the notice of lien ineffective. We disagree.

The statute, § 38–22–109(2), C.R.S. (1982 Repl.Vol. 16A), provides that the lien statement:

"shall be *signed and sworn to* by the party, or by one of the parties, claiming such lien, or *by some other person in his or their behalf, to the best knowledge, information, and belief of the affiant....*" (emphasis added)

We hold that if, as here, the lien claimant personally signs the form, and the document as "subscribed and sworn to" is then properly notarized, the requirements of the statute have been met. We interpret the plain meaning of the statute to require a verification and second signature only when the form is signed on behalf of the claimant by another. It is not required when, as here, the lien claimant personally signs the form. *See Consumers' Lumber & Investment Co. v. Hayutin,* 75 Colo. 483, 226 P. 860 (1924); *Gutshall v. Kornaley,* 38 Colo. 195, 88 P. 158 (1906) (substantial compliance with statute is sufficient).

The judgment is reversed, and the cause is remanded for further proceedings consistent with the views expressed herein.

JONES and NEY, JJ., concur.